UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BRANDON R.,[1] | ) |
| | ) No. 21 CV 176 |
| Plaintiff, | ) |
| | ) |
| v. | ) Magistrate Judge Young B. Kim |
| | ) |
| KILOLO KIJAKAZI, Commissioner of Social Security, | ) |
| | ) |
| | ) October 13, 2023 |
| Defendant. | ) |

**MEMORANDUM OPINION and ORDER**

Brandon R. seeks disability insurance benefits ("DIB") asserting that various mental health conditions and a vestibular disorder prevent him from working. He brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security denying his application for benefits. Before the court are cross motions for summary judgment. For the following reasons, Brandon's motion is denied, and the government's is granted:

**Procedural History**

Brandon applied for DIB in May 2014 alleging disability onset in December 2012. (Administrative Record ("A.R.") 236.) After his application was denied initially and upon reconsideration at the administrative level, (id. at 114-17, 119-26), he sought and was granted a hearing before an Administrative Law Judge ("ALJ"), (id. at 145-52). At the September 2016 hearing, Brandon amended his alleged disability

---

[1] Pursuant to Internal Operating Procedure 22, the court uses Brandon's first name and last initial in this opinion to protect his privacy to the extent possible.

1

onset from December 2012 to April 2015, and he and a vocational expert ("VE") testified. (Id. at 73-106.) The ALJ concluded in March 2017 that Brandon is not disabled, (id. at 22-35), and the Appeals Council denied Brandon's request for review, (id. at 1-7). Brandon then sought judicial review. (Id. at 586-88); *Brandon R. v. Berryhill*, No. 18 CV 0898 (N.D. Ill.) (Coleman, J.). The court ultimately granted an agreed motion to remand for further administrative proceedings, ordering the ALJ to reevaluate the opinion of Brandon's treating provider Dr. Marco De La Cruz and reconsider Brandon's residual functional capacity ("RFC"). (A.R. 596.)

On remand, Brandon appeared with his attorney at a second hearing before a new ALJ in November 2019, and he, medical expert ("ME") Dr. Ellen Rozenfeld (a psychologist), and a VE testified. (Id. at 528-85.) The ALJ then reached the same conclusion that Brandon is not disabled. (Id. at 504-21.) Brandon again sought judicial review, and the parties consented to this court's jurisdiction, *see* 28 U.S.C. § 636(c); (R. 6).

## Analysis

Brandon this time argues that the ALJ: (1) failed to properly account for his concentration and social deficits in the RFC assessment; and (2) improperly rejected the opinions of treating medical professionals. (See generally R. 17, Pl.'s Mem.) When reviewing the ALJ's decision, the court asks only whether the ALJ applied the correct legal standards and substantial evidence supports the decision, *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019), which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Biestek v.*

2

*Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation and citations omitted). This deferential standard precludes the court from reweighing the evidence or substituting its judgment for the ALJ's, allowing reversal "only if the record compels" it. *Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021) (quotation and citation omitted). However, the ALJ must "provide a 'logical bridge' between the evidence and his conclusions," *Butler v. Kijakazi*, 4 F.4th 498, 501 (7th Cir. 2021), supplying enough detail to "enable a review of whether the ALJ considered the totality of a claimant's limitations," *Lothridge v. Saul*, 984 F.3d 1227, 1233 (7th Cir. 2021). Having considered the arguments and the record, the court finds that the ALJ satisfied her obligations.

**A.     Opinion Evidence**

Although Brandon complains first about the ALJ's RFC assessment, the court begins its analysis with his second complaint—that the ALJ did not give enough weight to certain treating physician opinions—because any error in this regard would require a reassessment of the RFC. A treating source's opinion in cases filed before March 27, 2017, is entitled to "controlling weight" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with other substantial evidence." *Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008) (quotation and citation omitted). Nevertheless, an ALJ may give such an opinion less weight if she offers "good reasons," *Stage v. Colvin*, 812 F.3d 1121, 1126 (7th Cir. 2016), and the Seventh Circuit "uphold[s] all but the most patently erroneous reasons for discounting a treating physician's assessment," *Stepp v. Colvin*, 795 F.3d 711, 718

(7th Cir. 2015) (quoting *Luster v. Astrue*, 358 Fed. Appx. 738, 740 (7th Cir. 2010)). As such, "[o]nce contrary evidence is introduced . . . a treating physician's opinion becomes just one piece of evidence for the ALJ to evaluate," and the ALJ must then analyze various factors in deciding the weight to afford it, if any. *Ray v. Saul*, 861 Fed. Appx. 102, 105 (7th Cir. 2021). Those factors include: the length, nature, and extent of the treatment relationship; frequency of examination; physician's specialty; types of tests performed; and consistency with and support for the opinion in the record. 20 C.F.R. § 404.1527(c). An ALJ's decision to discount a treating physician's opinion after considering these factors stands if she "minimally articulated" her reasons—"a very deferential standard." *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008).

Brandon complains that the ALJ gave only "little weight" to three letters treating psychologist Dr. Vincent Pisani submitted on his behalf. These letters—dated October 2016, November 2018, and October 2019—indicate that Brandon had been seeing Dr. Pisani "periodically" since January 2015, cannot perform his duties as a barber, has difficulty standing, and suffers from anxiety, depression, and dizziness. (A.R. 40, 931, 1026.) The 2018 and 2019 letters also mention Brandon's agoraphobia and the "minimal progress" he has made to resolve it. (Id. at 931, 1026.) When giving the letters "little weight," the ALJ correctly noted that each is dated after Brandon's March 2016 date last insured, information reflected therein pertains only to the time period when Dr. Pisani drafted them, and Dr. Pisani did not include any treatment notes with them. (Id. at 518.) The ALJ continued that while the letters

4

show that Brandon has "mental impairments" causing "some level of limitations," the "frequency of contact, type of treatment, or general levels of functioning" are not documented, and the letters are not "sufficiently specific to extrapolate what specific functional limitations were present" at the time Dr. Pisani prepared the letters. (Id.)

The ALJ's reasoning is sound. Nevertheless, Brandon claims that the ALJ should have heeded a directive from the Appeals Council to "request additional evidence or further clarification from medical sources . . . as appropriate." (R. 17, Pl.'s Mem. at 14 (citing A.R. 601-03).) An ALJ's failure to develop a full and fair record is "'good cause' to remand for gathering of additional evidence." *Smith v. Apfel*, 231 F.3d 433, 437 (7th Cir. 2000). But an ALJ is not required "to gather any and all medical evidence that might conceivably lend a hand," *Fonseca v. Kijakazi*, No. 19 CV 8353, 2022 WL 1607440, at *6 (N.D. Ill. May 20, 2022), and "[p]articularly in counseled cases," courts defer to the ALJ on whether the record has been adequately developed, *Wilcox v. Astrue,* 492 Fed. Appx. 674, 678 (7th Cir. 2012).

As the claimant, Brandon had the burden to "introduce some objective evidence . . . that further development is required." *Wilcox*, 492 Fed. Appx. at 678; *see also Griffin v. Barnhart*, 198 Fed. Appx. 561, 564 (7th Cir. 2006) (holding that ALJ's duty to develop record is not "so sweeping that it can relieve an applicant entirely of his own responsibility for supporting his claim"). Yet, Brandon informed the ALJ just six days before his second hearing that the "procural" of his progress notes with Dr. Pisani would "require the issuance of a subpoena." (A.R. 760.) The record does not reflect that a subpoena was issued, and the court declines to fault the ALJ for this

5

because: (1) Brandon's subpoena request—if it can be construed as such—was untimely and unsupported, (see id. at 686 (hearing notice indicating that requests for subpoenas must be received at least 10 days before hearing and describe (among other things) "important facts you expect the document[s] . . . to prove" and "[w]hy you cannot prove these facts without a subpoena")); (2) Brandon's attorney made no argument to this effect at the hearing and in fact represented that the record was complete, (see id. at 528-85); and (3) the ALJ was entitled to infer that Brandon put on his best case because an attorney represented him during the hearing, *see Schloesser v. Berryhill*, 870 F.3d 712, 721 (7th Cir. 2017) (noting that where claimant "has been and continues to be represented by counsel," he is assumed to be make "his strongest case for benefits"). Moreover, the ALJ acknowledged Brandon's standing difficulties by limiting him to sedentary work and included other non-exertional limitations. The court therefore finds no error here.

Brandon next argues that the ALJ erred when she afforded only "little weight" to treating internist Dr. Haresh Sawlani's opinions in an October 2019 RFC questionnaire, because the ALJ reasoned without explanation that "many changes were clearly noted in the record between this opinion and the date last insured." (R. 17, Pl.'s Mem. at 14 (citing A.R. 519).) It is true that the ALJ does not point directly to the "changes" she refers to here. But the court can infer at least one—that Brandon was not diagnosed with agoraphobia until well after the relevant period, so it follows that Dr. Sawlani's opinions related to that diagnosis warrant less weight. (See A.R. 517, 577-78.)

6

The ALJ provided other reasons for discounting Dr. Sawlani's assessment too: (1) while Dr. Sawlani treated Brandon during the relevant period, his opinion is dated years after the date last insured, (id. at 518-19); (2) his assessment includes internal inconsistencies, (id. (citing id. at 1031-32 (noting that Brandon could sit for 8 hours but also needed to lie down for 3 hours during an 8-hour workday, and to lie down every hour for an hour))); and (3) most of the opinions in the assessment—which are extreme—are not reflected in or supported by Dr. Sawlani's own treatment notes or other documentation, (id.). She also noted that although Dr. Sawlani's treatment notes for the period in question reflect diagnoses of anxiety and depression and prescriptions for medication to manage these impairments, Brandon's psychological, neurological, and other examinations were frequently normal. (See, e.g., id. at 513 (citing id. at 999-1001 (June 2015 treatment notes reflecting generally normal neurological and psychological examination and denial of dizziness, anxiety, and balance issues, among other things), 990 (May 2016 treatment notes reflecting same), and 987 (July 2016 treatment notes reflecting same)).) In addition, while Brandon suggests that the ALJ should have credited those aspects of Dr. Sawlani's opinion that were consistent and notes that the ALJ "said nothing of his opinion regarding [Brandon's] fatigue and likely off-task behavior," (R. 17, Pl.'s Mem. at 14), an opinion need not be entirely inconsistent for an ALJ to discount it, and other than perhaps his own subjective complaints, there is no record evidence suggesting that Brandon's fatigue or off-task behavior was as serious as Dr. Sawlani's RFC assessment indicates.

7

Brandon nonetheless argues that there is evidence to support the debilitating symptoms Dr. Sawlani endorses, including that Brandon: was diagnosed with generalized anxiety disorder and treated with medication; experienced negative thoughts; presented at the emergency room in February 2016 with intermittent dizziness, vertigo, and foggy thinking; saw a neurologist who suspected vestibular dysfunction and anxiety; and had some abnormalities revealed by later testing and examination. (R. 17, Pl.'s Mem. at 15.) But while this evidence suggests that Brandon was experiencing various physical and mental limitations, it does not contradict the ALJ's findings or require her to adopt Dr. Sawlani's more restrictive assessment. Again, Brandon may have preferred a different weighting of the evidence, but the ALJ considered the record, and this court cannot override her judgment. *See Burmester*, 920 F.3d at 510 (holding that courts must not "reweigh evidence, . . . or substitute [its] judgment for that of the Commissioner").

For the foregoing reasons and those detailed below, this court also is not concerned that the ALJ "relied largely" upon what Brandon characterizes as "the equivocal and unsupported opinion of [the ME]," who did not examine him, over the opinions of his treating providers. (R. 17, Pl.'s Mem. at 12.) Just as the ALJ adequately considered and explained her assessment of his treating providers' opinions, she also adequately evaluated the ME's opinion. Indeed, the ALJ walked through the ME's testimony and the evidence the ME cited, explaining how the ME considered evidence both before and after the relevant period, and that unlike Brandon's treating providers, she had the benefit of the entire record. (A.R. 517.)

8

That same evidence supported not only the ME's opinions, but also the ALJ's reasoning and treatment of the same. Moreover, the ALJ's opinion evaluation in some respects helped Brandon's case. (See, e.g., A.R. 518 (giving more credence to ME's paragraph B assessment than to treating provider Dr. De La Cruz's comparatively less restrictive assessment).) There was no error here.

**B.   RFC Assessment**

Brandon complains about the ALJ's RFC assessment. The RFC measures the tasks a person can perform given his limitations based on "all the relevant evidence" in the administrative record. 20 C.F.R. § 404.1545(a)(1); *see also Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013). When assessing the RFC, the ALJ must "evaluate all limitations that arise from medically determinable impairments, even those that are not severe, and may not dismiss a line of evidence contrary to the ruling." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). She must also give "weight to the medical evidence and opinions submitted, unless specific, legitimate, reasons constituting good cause are shown for rejecting it." *Chambers v. Saul*, 861 Fed. Appx. 95, 101 (7th Cir. 2021).

After determining that Brandon suffers from severe vestibular disorder with dizziness, depression, and anxiety and adopting the ME's opinions as to paragraph B criteria, the ALJ found that Brandon could perform sedentary work, except that:

> he could not climb ladders, ropes, or scaffolds but could occasionally climb ramps and stairs, as well as occasionally balance, stoop, kneel, crouch, and crawl. He must avoid all exposure to hazards, including dangerous moving machinery and unprotected heights. He could understand, remember, and carry out instructions for simple, routine, and repetitive tasks with sufficient persistence, concentration, or pace

9

> to timely and appropriately complete such tasks, with no fast paced production rate or strict quota requirements.

(A.R. 510).

At the outset, Brandon asserts that the ALJ erred by adopting the ME's opinions on the paragraph B criteria because she had rejected the ME's step-two finding that Brandon's depression was non-severe. (Pl.'s Mem. at 10.) But an ALJ may reject one aspect of an ME's opinion without rejecting the opinion outright, so this alone was not an error. *See, e.g.*, *Jill A. W. v. Kijakazi*, No. 20 CV 3854, 2022 WL 225879, at *6-8 (N.D. Ill. Jan. 26, 2022) (holding that ALJ did not err in finding ME opinion "partially persuasive").

Brandon next argues that the ALJ erred in relying on the ME's opinion that he was mildly limited in the paragraph B criteria of interacting with others because the ME did not find that Brandon suffered from agoraphobia during the relevant period despite evidence "that the symptoms were there." (R. 17, Pl.'s Mem. at 10.) However, both the ME and ALJ correctly note that there is no reference to agoraphobia in the medical record until Brandon's October 2017 diagnosis—more than 18 months after his date last insured. (A.R. 508; 573.) And the evidence Brandon says shows that he suffered from agoraphobia earlier consists of brief references to anxiety and depression, a generic reference to "techniques to avoid panic," and his own testimony. (R. 17, Pl.'s Mem. at 10 (citing A.R. 370-71, 408-09, 423).) While the ME and ALJ agree that Brandon suffered from anxiety and depression during the relevant period, neither diagnosis means that he necessarily developed agoraphobia during the insured period. *See*

10

https://www.mayoclinic.org/diseases-conditions/agoraphobia/symptoms-causes/syc-20355987 (last visited Oct. 10, 2023) (describing agoraphobia as but one type of anxiety disorder); *see also* https://www.mayoclinic.org/diseases-conditions/anxiety/symptoms-causes/syc-20350961 (last visited Oct. 10, 2023) (indicating panic as symptom in anxiety disorders more generally). Moreover, the ALJ need not take Brandon at his word, particularly when, as she notes, there was no contemporaneous medical evidence to corroborate his testimony. *See Murphy v. Colvin*, 759 F.3d 811, 815-16 (7th Cir. 2014) (holding that an ALJ's symptom evaluation will not be disturbed if it is based on specific findings and evidence and not "patently wrong").

Brandon also complains that the ALJ erred by adopting the ME's conclusion that he is moderately limited in concentration, persistence, or pace ("CPP"), because the ME improperly: (1) relied on Brandon's relatively unremarkable mental status examinations ("MSEs"); and (2) referred only to Brandon's brain fog, even though the ALJ noted Brandon's "fatigue and anxiety related to dizziness" must also be considered. (R. 17, Pl.'s Mem. at 10.) Both arguments fail. First, there is nothing inherently wrong with relying on MSEs. To be sure, and despite Brandon's suggestions otherwise, the Seventh Circuit in *Gerstner v. Berryhill* criticized the ALJ for ignoring aspects of treatment notes that were helpful to the claimant—not for relying on "normal" MSEs. 879 F.3d 257, 261 (7th Cir. 2018). And the ALJ and ME are correct that Brandon's examinations generally fell short of being noteworthy. *See Chambers*, 861 Fed. Appx. at 101-02 (affirming ALJ decision that relied in part on

11

"mostly unremarkable" MSEs); (see also A.R. 373 (February 2015 psychiatry note indicating "no signs of depression or elevation" and otherwise normal exam), 410 (June 2015 provider note indicating without more that Brandon suffered from anxiety and depression and was "having some [symptoms]"), 54 (April 2016 ENT notes reflecting "appropriate mood and affect"), 384 (May 2016 neurology note indicating normal MSE)). Moreover, the ALJ considered Brandon's fatigue and anxiety related to dizziness, ultimately finding that those symptoms did not warrant greater than the moderate CPP restriction the ME assessed.[2] (See, e.g., A.R. 509 (noting Brandon's "occasion[al] reports of fatigue" and that dizziness caused him anxiety).) She was not required to conclude otherwise. But for an October 2019 RFC assessment by Dr. Sawlani—which the ALJ properly discounted, as discussed—no medical opinion suggested greater restriction was appropriate. (Id. at 1030 (Dr. Sawlani's assessment indicating that Brandon's stress would "constantly" interfere with his ability to attend to and concentrate on simple work tasks).) Brandon may have preferred a different conclusion, but the court cannot reweigh the evidence. *Burmester*, 920 F.3d at 510.

Brandon next argues that the ALJ failed after completing her paragraph B analysis to "provide a more detailed assessment of [his] mental functioning for purposes of RFC," relying instead on "flawed inferences" from his MSEs. (R. 17, Pl.'s Mem. at 11.) However, the ALJ meticulously combed through the record seeking to

---

[2] Brandon later represents that the ALJ "pointed out" that a moderate limitation in CPP "does not . . . adequately accommodate [Brandon's] fatigue and other symptoms." (R. 17, Pl.'s Mem. at 12.) This characterization is incorrect, as explained.

12

understand and articulate Brandon's limitations. Indeed, Brandon does not contend that the ALJ ignored any record evidence or opinion, and ultimately the ALJ's opinion matches that of the ME's. *See Burmester*, 920 F.3d at 511 ("[A]n ALJ may reasonably rely upon the opinion of a medical expert who translates [CPP] findings into an RFC determination."). It matters not that the ALJ's comments in this respect are not confined to the RFC section of her decision. *See Rice v. Barnhart*, 384 F.3d 363, 370 n.5 (7th Cir. 2004) (noting that courts "read the ALJ's decision as a whole").

Additionally, and as discussed, it was not wrong for the ALJ (or the ME) to rely on Brandon's generally benign MSEs when doing so. But even if the ALJ overemphasized the MSEs, there can be no dispute that Brandon: (1) frequently denied psychiatric symptoms—before, during, and after the relevant period, (see, e.g., A.R. 373 (February 2015), 457 (February 2016), 991 (May 2016)); (2) rarely complained of fatigue; and (3) stated that his anxiety was "well controlled" even when at the ER for dizziness, (id. at 457). Finally, while Brandon suggests that the assessed CPP limitations are insufficient, he fails to specify any necessary additional restrictions.[3] (See generally R. 17, Pl.'s Mem.; R. 22, Pl.'s Reply); *see also Weaver v. Berryhill*, 746 Fed. Appx. 574, 579 (7th Cir. 2018) (holding that claimant must "establish not just the existence of [his] conditions, but . . . that they support specific

---

[3] Brandon suggests that the RFC does not accommodate even moderate CPP limitations, citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614 (7th Cir. 2010). But both the RFC and the hypothetical presented to the VE contain the CPP terminology that *O'Connor* and its progeny require. (See A.R. 510.)

13

limitations affecting [his] capacity to work"). The ALJ's RFC assessment is thus supported by substantial evidence and remand is not warranted on this ground.[4]

## Conclusion

For the foregoing reasons, Brandon's motion for summary judgment is denied, and the government's is granted.

                        **ENTER:**

                        _____
                        **Young B. Kim**
                        **United States Magistrate Judge**

---

[4] Brandon also represents that the ALJ erroneously relied on Dr. De La Cruz's opinion that Brandon had only mild limitations in each of the four paragraph B criteria, even though the Appeals Council indicated it was wrong for the ALJ in the first decision to have relied on this opinion because Dr. De La Cruz does not specialize in mental health. (R. 17, Pl.'s Mem. at 11.) However, the Appeals Council simply required the ALJ to consider that fact when determining the weight to afford to the opinion, not to reject it outright. (A.R. 602 (faulting the ALJ for not "consider[ing] [Dr. De La Cruz's] lack of specialization in mental health treatment")).) And not only did the ALJ do so on remand, but she also gave less weight to Dr. De La Cruz's opinion and assessed greater mental limitations than he did. (Id. at 518 (assigning "limited" weight to Dr. De La Cruz's opinion in part because he was not mental health specialist).)